ROGER E. GOLD, ESQ. [SBN 214802]
rgold@rgoldlegal.com
CECIL B. CRAIN, ESQ. [SBN 252780]
ccrain@rgoldlegal.com
MIA MATTIS, ESQ. [SBN 191027]
mmattis@rgoldlegal.com
**GOLD LAW FIRM**
591 Redwood Highway, Bld. 4000
Mill Valley, CA 94941
Tel: (415) 869-6990
Fax: (415) 373-4579

Attorneys for Plaintiffs
RACHEL LEIGH MAYNARD, et al.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL LEIGH MAYNARD individually and as successor in interest to JEFFREY STODDARD and JACOB BRADLEY STODDARD,<br><br>      Plaintiffs,<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION, BUFFALO PUMPS DIVISION; ELECTROLUX HOME PRODUCTS, INC, SII COPES-VULCAN; FLOWSERVE US INC; FOSTER WHEELER LLC; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY; GREENE TWEED & CO. INC.; PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION; STERLING FLUID SYSTEMS ISA, LLC FKA PEERLESS PUMPS; | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. NEGLIGENCE<br>2. BREACH OF EXPRESS AND IMPLIED WARRANTIES<br>3. STRICT LIABILITY<br>4. PREMISES LIABILITY<br>5. MARITIME NEGLIGENCE<br>6. MARITIME STRICT LIABILITY<br>7. SURVIVAL<br><br>(Asbestos – Wrongful Death)<br><br>DEMAND FOR JURY TRIAL |

1  VELAN VALVE CORP.;                    )
2  WARREN PUMPS, LLC;                    )
   AND THE FIRST DOE THROUGH FOUR        )
3  HUNDREDTH DOE; INCLUSIVE,             )
                                         )
4              Defendants.               )
                                         )
5  _____      )

## **PARTIES**

1.   The Plaintiffs in this matter are the heirs of the deceased, JEFFEREY

STODDARD,

herein referred to as "Decedent."

RACHEL LEIGH MAYNARD          DAUGHTER OF DECEDENT

JACOB BRADLEY STODDARD        SON OF DECEDENT

The Plaintiffs in this matter shall herein be referred to as "Plaintiffs."

2.   Decedent JEFFREY STODDARD suffered from mesothelioma; an always

fatal form of cancer only caused by exposure to asbestos.  Decedent

JEFFREY STODDARD was diagnosed with malignant pleural

mesothelioma on December 12, 2023, and passed away from malignant

pleural mesothelioma on January 5, 2024.

3.   Plaintiffs are informed and believe, and thereon allege that mesothelioma is

a progressive lung disease, cancer and other serious diseases are caused by

inhalation of asbestos fibers without immediate perceptible trauma, and that

said diseases resulting from exposure to asbestos develop over a period of

time.

4. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendant FIRST DOE through FOUR HUNDREDTH DOE, inclusive, are unknown to Plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon alleges, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Decedent, as hereinafter alleged.

5. Plaintiffs are informed and believe, and allege, that at all times herein mentioned defendant FIRST DOE through FOUR HUNDREDTH DOE, inclusive, were and are authorized to do business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

6. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, each defendant named herein and FIRST DOE through FOUR HUNDREDTH DOE, inclusive, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the

State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

7. At all times herein mentioned, each of the defendants named herein, including defendants FIRST DOE through FOUR HUNDREDTH DOE, except as otherwise alleged, was the agent, servant, employee and/or joint venturer of co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Certain defendants agreed and conspired among themselves and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Decedent JEFFEREY STODDARD; and such defendants, as co-conspirators, are liable for the acts, or failures to act, of other conspiring defendants.

8. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants, hereinafter referred to as DEFENDANTS:

AIR & LIQUID SYSTEMS CORPORATION, BUFFALO PUMPS DIVISION;

ELECTROLUX HOME PRODUCTS, INC, SII COPES-VULCAN;

FLOWSERVE US INC;

FOSTER WHEELER LLC;

GARDNER DENVER, INC.;

GENERAL ELECTRIC COMPANY;

GREENE TWEED & CO. INC.;

PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION;

STERLING FLUID SYSTEMS ISA, LLC FKA PEERLESS PUMPS;

VELAN VALVE CORP.;

WARREN PUMPS, LLC;

and ONE HUNDREDTH through THREE HUNDRETH DOE, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some state or foreign jurisdiction, and that said defendants were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the City and County of San Francisco, State of California.  The defendants identified in this paragraph are hereinafter referred to "DEFENDANTS".

9.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants:

GENERAL ELECTRIC COMPANY;

PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS

CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM

INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A

PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE

ELECTRIC CORPORATION;

and THREE HUNDREDTH through FOUR HUNDRETH DOE, inclusive,

are corporations organized and existing under and by virtue of the laws of

the State of California, or the laws of some state or foreign jurisdiction, and

that said defendants were and are authorized to do and are doing business in

the State of California, and that said defendants have regularly conducted

business in the City and County of San Francisco, State of California.  The

defendants identified in this paragraph are hereinafter referred to

"CONTRACTOR/PREMISES DEFENDANTS."

10.    At all times herein mentioned, the named DEFENDANTS, and ONE

HUNDREDTH through FOUR HUNDRETH DOE, was the successor,

successor in business, successor in product line or a portion thereof, assign,

predecessor, predecessor in business, predecessor in product line or a

portion thereof, parent, holding company, affiliate, venturer, co-venturer,

subsidiary, wholly or partially owned by, or the whole or partial owner of or

member in an entity researching, studying, manufacturing, fabricating,

designing, modifying, failing to retrofit, labeling, assembling, distributing,

leasing, buying, offering for sale, supplying, selling, inspecting, testing,

authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter be referred to as "alternate entities." Each of the herein named DEFENDANTS is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, failed to retrofit, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The defendants, and each of them, are liable for the acts of each and every alternate entity, and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such alternate entity; DEFENDANTS, and each of them, have acquired the assets, product line, or a portion

thereof, of each such alternate entity; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such alternate entity; each such DEFENDANT has the ability to assume the risk-spreading role of each such alternate entity; and that each such DEFENDANT enjoys the goodwill originally attached to each such alternate entity.

## VENUE AND JURISDICTION

11. **Jurisdiction: Decedent JEFFREY STODDARD** was a citizen of the State of California, at the time of the injury.

12. DEFENDANTS are each corporation and are incorporated under the laws of and having their principal places of business in the following States:

| | |
|---|---|
| AIR & LIQUID SYSTEMS, INC., SUCCESSOR-BY-MERGER TO BUFFALO PUMPS | Delaware |
| ELECTROLUX HOME PRODUCTS, INC, SII COPES-VULCAN | North Carolina |
| FLOWSERVE US INC | Texas |
| FOSTER WHEELER LLC | Texas |
| GARDNER DENVER, INC.; | Wisconsin |
| GENERAL ELECTRIC COMPANY | New York; Massachusetts |
| GREENE TWEED & CO., INC. | Pennsylvania |

| PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION | Delaware; New York |
| --- | --- |
| STERLING FLUID SYSTEMS ISA, LLC FKA PEERLESS PUMPS | Indiana |
| VELAN VALVES | Vermont |
| WARREN PUMPS LLC | Delaware |

13.    This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

14.    This case is of Admiralty and Maritime Jurisdiction and is a claim within the meaning of F.R.C.P. 9(h). The locations of Plaintiff JEFFREY STODDARD'S exposures were on navigable waters, and his exposure occurred in connection with traditional maritime activity, as specified herein.

The "saving to suitors" clause of 28 U.S.C. Section 1333 allows Plaintiffs to pursue State claims in addition to Plaintiffs' maritime claims.

15. **Venue / Intradistrict Assignment:** Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

(ALL DEFENDANTS, their alternate entities, and DOES 1-400)

16. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth at length herein, each of the preceding paragraphs.

17. At all times herein mentioned, DEFENDANTS, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing,

servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

18.    At all times herein mentioned, DEFENDANTS, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, failed to retrofit, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons."

19. DEFENDANTS, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

20. DEFENDANTS, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through re-entrainment.

21. Decedent JEFFREY STODDARD has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent JEFFREY

STODDARD'S exposure to asbestos and asbestos-containing products by fault of the defendants occurred at various locations within the state of California including, but not limited to when Decedent JEFFREY STODDARD served in the United States Navy from January 1974, through September 1975. He completed basic training at San Diego Naval Training Center (USNTCSD) before he was assigned to and served on USS BARRY (DD-933) as fireman's apprentice (FA) and boiler technician (BT) in the engine and boiler rooms from April 1974 through his discharge in September 1975. Decedent was also present standing firewatch on the BARRY during overhauls and repairs at Philadelphia Naval Shipyard. Decedent was responsible for maintaining, inspecting, operating boilers and propulsion and other equipment in the engine room of USS BARRY.

22.    As a direct and proximate result of the acts, omissions, and conduct of the DEFENDANTS, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiffs as set forth herein, namely the death of their father due to exposure to asbestos.

23.    Plaintiffs are informed and believe, and thereon allege, that mesothelioma, progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and

that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

24.    Decedent JEFFREY STODDARD suffered and died from mesothelioma related to his exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

25.    As a direct and proximate result of the aforesaid conduct of DEFENDANTS, Decedent, suffered from a medical condition known as mesothelioma a lung disease related to the exposure to asbestos.  Decedent was not aware that exposure to asbestos presented any risk of injury and/or disease to her and had not been advised or informed by anyone that he could contract any disease, sickness or injury as a result of working in the vicinity of asbestos.

26.    As a direct and proximate result of the aforesaid conduct of DEFENDANTS, as aforesaid, the exposure to asbestos caused severe and permanent malignant injuries to Decedent, including, but not limited to, mesothelioma, lung damage and his ultimate death, all to his general damages in a sum invoking the unlimited jurisdiction of the Court.

27.    As a result of the conduct of DEFENDANTS, and each of them, decedent's heirs have sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent in a sum in invoking

the unlimited jurisdictional limits of the Court.

28.    As a further result of the conduct of DEFENDANTS, and the death of decedent, Plaintiffs herein have incurred funeral and burial expenses in an amount to be subsequently ascertained.

29.    As a further result of the conduct of DEFENDANTS, Plaintiffs have incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospitals, x rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this Complaint accordingly when the true and exact cost thereof is ascertained.

30.    DEFENDANTS, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

31.    DEFENDANTS are liable for the fraudulent, oppressive, and malicious acts of their alternate entities, and each of them, and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their alternate entities as set forth herein.

32.    The herein-described conduct of DEFENDANTS, their alternate entities, and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed

persons." Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof against each Defendant.

WHEREFORE, Plaintiffs pray judgment against DEFENDANTS, their alternate entities, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS AND IMPLIED WARRANTIES

(ALL DEFENDANTS, their alternate entities, and DOES 1-400)

33.  Plaintiffs re-allege and incorporate herein by reference, as though fully set forth at length herein, each of the preceding paragraphs.

34.  DEFENDANTS and DOES 1 through 400, and each of them, inclusive, sold and/or otherwise supplied the asbestos containing products, materials, and equipment to Decedent JEFFREY STODDARD and/or his employers.

35.  That in connection with the manufacture, preparation, sale, specification, installation, use, and supply of asbestos products, DEFENDANTS, expressly and impliedly warranted that said products were of good and merchantable quality and fit for their intended use. However, in truth and in fact, said products contained harmful and deleterious asbestos fibers, known to the DEFENDANTS herein, to be defective and harmful to humans exposed thereto.

36. Said products were not and are not suitable for the purposes for which said products were intended, supplied, and relied upon, nor suitable for any other similar purpose, including their use by human beings in confined spaces where humans would be physically present, working, resting, or breathing.

37. Decedent JEFFREY STODDARD relied on the express and implied warranties of DEFENDANTS, in the use of and exposure to said asbestos and asbestos products, and Decedent JEFFREY STODDARD was using and/or exposed to said asbestos in a reasonably foreseeable intended manner.

38. DEFENDANTS breached the above-described express and implied warranties in that said substance was defective, which defects permitted and/or caused said substance to seriously and permanently cause injury to Decedent while using said substance in a manner that was reasonably foreseeable.

39. The breaches of warranties by the DEFENDANTS, and each of them, as described in this cause of action was a substantial factor and a legal cause of the injuries and damages sustained by Plaintiffs due to the death of Decedent.

40. As a direct and proximate result of the above-described breaches of warranties by said DEFENDANTS, Decedent JEFFREY STODDARD

suffered and died from mesothelioma, and  suffered damages as alleged above.

41.    In particular, Plaintiffs will show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said DEFENDANTS, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known, each of the acts set forth here causing Decedent's disease and injuries. As the above referenced conduct complained of in this complaint of said DEFENDANTS, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, and outrageous; and said DEFENDANTS, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent and of workers exposed to asbestos and asbestos products, such that, Plaintiffs, for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

## THIRD CAUSE OF ACTION

## STRICT LIABILITY

(ALL DEFENDANTS, their alternate entities, and DOES 1-400)

42.   Plaintiffs re-allege and incorporate herein by reference, as though fully set forth at length herein, each of the preceding paragraphs.

43.   At all times mentioned herein, the DEFENDANTS, manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished, contracted for installation, contracted others to install, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers, and that asbestos and/or products containing asbestos and/or products which created an asbestos hazard and/or safety equipment intended to block the entry of asbestos fibers were defective in that they were not as safe as an ordinary consumer of such products would expect; and that the gravity of the potential harm resulting from the use of the defective products of the DEFENDANTS, and the risk of said asbestos and asbestos-containing products outweighed any benefit of the said DEFENDANTS' design, when safer alternative designs and materials existed and were available that could and should have been substituted and used instead of the deadly asbestos, including providing adequate warning of such potential harm.

44.    At all times mentioned herein, the DEFENDANTS, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner.

45.    The DEFENDANTS, placed said asbestos products on the market, knowing the asbestos-containing products would be used without inspection for such defects and unsafe conditions, and that said DEFENDANTS nonetheless took no action to warn or otherwise protect "exposed persons," including Decedent JEFFREY STODDARD, who foreseeably would be exposed to these defective and inadequately labeled asbestos and asbestos-containing products.

46.    The asbestos and asbestos-containing products, components, and assemblies of the DEFENDANTS, were substantially the same as when they left said DEFENDANTS' possession.

47.    The aforementioned asbestos and asbestos-containing products of the DEFENDANTS were used by Decedent and "exposed persons" in the manner for which they were intended or in a manner that was or would be reasonably foreseeable, and Decedent was exposed to said asbestos and asbestos-containing products in a manner foreseeable to said DEFENDANTS.

48. The dangers inherent in breathing asbestos-containing dust and the dangers inherent in asbestos-containing products, components, and assemblies were unknown and unforeseeable to Decedent, and Decedent had not been advised or informed by anyone that he could contract any disease, sickness, or injury as a result of working in the vicinity of asbestos.

49. The failure to warn by DEFENDANTS, and the product defect in the asbestos and asbestos-containing products of Defendants, and each of them, were substantial factors and a legal cause of Decedent's injuries, death and damages thereby sustained by Plaintiffs, and that said DEFENDANTS demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent, and that such intentional acts and omissions were substantial factors in causing his disease and death.

50. As a direct and proximate result of the aforesaid conduct of said DEFENDANTS, and each of them, Decedent suffered severe and permanent injuries to his person, and Plaintiffs suffered damages as alleged above.

51. In particular, Plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said DEFENDANTS, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors

in, and participated in, authorized, expressly and impliedly ratified, and had

full knowledge of or should have known, each of the acts set forth here

causing Decedent's mesothelioma and death.   As the above referenced

conduct complained of in this complaint of said DEFENDANTS, and each

of them, and their officers, directors, and managing agents, inclusive, was

and is vile, base, willful, malicious, fraudulent, oppressive, and outrageous,

and said DEFENDANTS, and each of them, demonstrated such an entire

want of care as to establish that their acts and omissions were the result of

actual conscious indifference to the rights, safety, and welfare of Decedent

and of workers exposed to asbestos and asbestos products, such that,

Plaintiffs, for the sake of example, and by way of punishing said defendants,

seek punitive damages according to proof.

## FOURTH CAUSE OF ACTION

### PREMISES LIABILITY

(PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and

DOES 300-400)

52.    Plaintiffs reallege and incorporate herein by reference each of the

proceeding paragraphs of this Complaint.

53.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS, and each of them, respectively, owned,

leased, maintained, managed, and/or controlled the premises listed where

was present.  The information provided is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information.  Additionally, Decedent might have been present at these or other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

54.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

55.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS,  and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent

and other workers or persons so exposed present on each of the aforesaid respective premises.

56.    At all times relevant herein, Decedent  entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation.  In so doing, Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

57.    Decedent  at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

58.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, remained in control of the premises where Decedent was performing his work.

59.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, owed to Decedent and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Decedent to an

unreasonable risk of harm and to avoid causing injury to said person.

60.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Decedent of, the existence of the aforesaid dangerous conditions and hazards on said premises.

61.   Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Decedent.

62.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Decedent and others unless special precautions were taken.

63.   In part, Decedent was exposed to dangerous quantities of asbestos fibers

and other toxic substances by reason of such contractors' failure to take necessary precautions.

64. The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, created an unsafe premise and an unsafe workplace by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

65. The unsafe premises or workplace was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS. Said negligent conduct includes but is not limited to:

    i.    Failure to warn of asbestos and other toxic dusts;

    ii.    Failure to suppress the asbestos-containing or toxic dusts;

    iii.    Failure to remove the asbestos-containing and toxic dust through the use of ventilation or appropriate means;

    iv.    Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    v.    Failure to inspect and/or test the air;

    vi.    Failure to provide medical monitoring.

66. The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of

common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said duties whether by themselves or others.

67. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, to provide

specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, failed to provide the required safeguards and precautions. PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS', violations of said codes include but are not limited to:

    i.    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    ii.    Failing to segregate work involving the release of asbestos or other toxic dusts;

    iii.    Failing to suppress dust using prescribed ventilation techniques;

    iv.    Failing to suppress dust using prescribed "wet down" techniques;

    v.    Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

    vi.    Failing to provide approved respiratory protection devices;

    vii.    Failing to ensure "approved" respiratory protection devices were used properly;

    viii.    Failing to provide for an on-going health and screening

program for those exposed to asbestos on the premises;

  ix. Failing to provide adequate housekeeping and clean-up of the

workplace;

  x. Failing to properly warn of the hazards associated with

asbestos as required by statute;

  xi. Failing to properly report renovation and disturbance of

asbestos-containing materials;

  xii. Failing to have an asbestos removal supervisor as required by

regulation;

  xiii. Failing to get approval for renovation as required by statutes;

and

  xiv. Failing to maintain records as required by statute.

68. PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and

each of them, were the "statutory employer" of Decedent as defined by the

California Labor Code and California case law.

69. Decedent at all times was unaware of the hazardous condition or the risk of

personal injury created by PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS' violation of said regulations, ordinances or

statutes.

70.   At all times mentioned herein, Decedent was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

71.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

72.   As a legal consequence of the foregoing, Decedent developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.   The   above-referenced   conduct   of   said   PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Decedent.

73.   PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS are guilty of oppression, fraud, or malice and engaged in conduct which was intended to cause injury to the Decedent or conduct which was carried on

with a conscious disregard of the rights or safety of others. PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS subjected Decedent to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS with the intention on the part of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS of thereby depriving Decedent of property or legal rights or otherwise causing injury.

74. Plaintiffs, therefore, for the sake of example and by way of punishing PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS seek punitive damages, according to proof.

## FIFTH CAUSE OF ACTION

### MARITIME NEGLIGENCE

(ALL DEFENDANTS AND DOES 1-400)

75. Plaintiffs reallege and incorporate by reference herein each and every paragraph of this Complaint, and makes them a part of this, the fifth

76. At all times herein mentioned, DEFENDANTS, their alternate entities, and each of them, designed, manufactured, produced, sold, supplied, merchandised, marketed, distributed, and/or otherwise placed into the stream of commerce asbestos or asbestos-containing products designed for

maritime use and marketed and supplied for installation aboard ships. Plaintiffs' claim against these ASBESTOS DEFENDANTS, as described in this cause of action, arises under the general maritime and admiralty laws of the United States and within maritime and admiralty jurisdiction pursuant to Title 28 U.S.C. § 1333(1).

77.     Title 46 U.S.C. § 30101, and the general admiralty and maritime law of the United States. Under these laws, the courts of the State of California have jurisdiction over and are competent to adjudicate maritime causes of action in this proceeding as long as the Court does not attempt to make changes in the substantive maritime law. *Madruga v. Superior Court of California* (1954) 346 U.S. 556, 561. Although substantive law applied in the maritime claims is federal, "admiralty cases do not fall within the scope of 28 U.S.C. § 1441, which designates as appropriate for removal only those cases 'arising under the Constitution, treaties or laws of the United States.'" *Romero v. International Terminal Operating Co*. (1959) 358 U.S. 354, 368-369. That is, the maritime claims alleged herein do not give rise to federal question jurisdiction.

78.     Plaintiffs' maritime claims against defendants as set forth herein and in the Sixth Cause of Action below are limited to failure to warn of the hazards of asbestos exposure. The DEFENDANTS' failure to warn renders them liable for negligence under maritime law and for strict liability in tort under

maritime law. Plaintiff will not pursue any theory of maritime liability other than failure to warn against these defendants.

79. At all times herein relevant, Decedent was engaged in the traditional maritime activity of ship repair, maintenance and/ overhaul, including but not limited to installing, removing, repairing, altering, fabricating, using, servicing, maintaining, handling, disturbing, transporting, and/or otherwise working with and coming into contact with asbestos-containing products manufactured, sold, supplied, distributed, and/or otherwise placed into the stream of commerce by DEFENDANTS and each of them.

80. Decedent's work as herein alleged also placed him in the vicinity of others performing traditional maritime activities of ship repair and overhaul, including but not limited to: installing, removing, repairing, altering, fabricating, using, servicing, maintaining, handling, disturbing, transporting, and/or otherwise working with and coming into contact with asbestos-containing products manufactured, sold, supplied, distributed, and/or otherwise placed into the stream of commerce by ASBESTOS DEFENDANTS, and each of them.

81. The asbestos-containing products described herein, which DEFENDANTS designed, advertised, and sold for maritime use and used aboard ships, were products essential to the operation, navigation, function, and safety of the

ship and to the continued existence, operation, and safety of the ship and its maritime activity.

82. At all times herein relevant,  DEFENDANTS, singularly and jointly, so negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate the health hazards of, warned or failed to warn of the health hazards of, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and/or advertised, the asbestos-containing products described herein such that said products, while being used in a manner that was reasonably foreseeable, caused injuries to Decedent and others while such persons performed ship construction and repair activities aboard launched vessels on navigable waters of the United States.

83. At all times mentioned herein, the DEFENDANTS, and each of them, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner. DEFENDANTS were under a duty to warn of the dangers of the above-mentioned activities pursuant to *Air & Liquid Systems Corp. ET AL. v. DeVries,* 873 F. 3d 232; March 19, 2019.

84. DEFENDANTS had a duty to exercise due care in the pursuit of the activities described in the preceding paragraph.

85. DEFENDANTS breached said duty of due care in that defendants knew or should have known that the aforementioned asbestos-containing products would be handled, used, repaired, installed, removed, and transported in a manner that would cause the products to release airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would be exposed to asbestos-containing dust, asbestos fibers, and/or particles.

86. Decedent's activities aboard launched vessels, and the maritime activities of others in his vicinity, as described above, caused Decedent to inhale asbestos-containing dust, asbestos fibers, and/or particles in a manner that was reasonably foreseeable; and to have his clothes, person, and/or belongings covered with and contaminated by asbestos dust, fibers, and/or particles in a manner that was reasonably foreseeable; these asbestos fibers were released and made airborne by the intended, ordinary, and foreseeable use of DEFENDANTS' asbestos-containing products.

87. As a direct and proximate result of the conduct of the DEFENDANTS as aforesaid, Decedent's exposure to asbestos-containing products and inhalation of asbestos-containing dust, fibers and/or particles caused him to

suffer severe and permanent injury, including but not limited to, asbestos-related disease, lung damage, cancer, and ultimately death.

88. As a direct and proximate result of the aforesaid conduct of the DEFENDANTS, Plaintiffs have incurred expenses for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment.

89. The failure to warn by DEFENDANTS, and the product defect in the asbestos and asbestos-containing products of DEFENDANTS were substantial factors and a legal cause of Decedent's injuries, death and damages thereby sustained by Plaintiffs, and that said ASBESTOS DEFENDANTS demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

90. DEFENDANTS' breaches of duty under traditional maritime negligence standards, as described herein, were willful, wanton, and undertaken with actual or constructive knowledge that serious injury would result, and/or were accomplished with such recklessness as to evince a conscious and callous disregard for the health, safety, and rights of "exposed persons,"

including Decedent. Plaintiffs, for the sake of example and by way of punishing said DEFENDANTS, seek punitive damages according to proof.

91.    WHEREFORE, Plaintiffs pray judgment against DEFENDANTS, and each of them, as hereafter set forth.

## SIXTH CAUSE OF ACTION

### MARITIME STRICT LIABILITY

(ALL DEFENDANTS AND DOES 1-400)

92.    Plaintiffs reallege and incorporate by reference herein each and every paragraph of this Complaint, and makes them a part of this, the Sixth Cause of Action, as though each were fully set forth herein.

93.    At all times herein relevant, DEFENDANTS designed, manufactured, sold, supplied, distributed, marketed, packaged, and/or otherwise placed into the stream of maritime commerce asbestos or asbestos- containing products that were unreasonably dangerous or defective when they left DEFENDANTS's control in that persons using the products in an intended or foreseeable manner, and persons in the vicinity of those using the products in an intended or foreseeable manner, would inhale asbestos fibers which cause serious disease, personal injury, and death.

94.    Decedent's  ship construction, maintenance, and repair activities aboard launched vessels on navigable waters, and such maritime activities of others in his vicinity, as described above, caused Decedent to inhale

asbestos-containing dust, asbestos fibers, and/or particles in a manner that was reasonably foreseeable; and to have his clothes, person, and/or belongings covered with and contaminated by asbestos-containing dust, asbestos fibers, and/or particles in a manner that was reasonably foreseeable, thereby rendering the products defective, unsafe, dangerous, and deadly.

95.    "Exposed persons," including Decedent, did not know of the substantial danger of using said products. Said dangers were not readily recognizable to "exposed persons."

96.    At all times mentioned herein, the DEFENDANTS, and each of them, were aware of the dangerous and defective nature of asbestos and asbestos-containing products when they were used in their intended or reasonably foreseeable manner. ASBESTOS DEFENDANTS were under a duty to warn of the dangers of the above-mentioned activities pursuant to *Air & Liquid Systems Corp. et al. v. DeVries*, 873 F. 3d 232; March 19, 2019.

97.    DEFENDANTS failed to adequately warn Decedent and others similarly situated of the risks that their asbestos-containing products created.

98.    Decedent relied on DEFENDANTS' representations, lack of warnings, and implied warranties of the fitness and safety of their asbestos-containing products and was injured as a result.

99.    DEFENDANTS' breaches of duty under traditional maritime strict liability standards, as restated and summarized in Section 402A of the Restatement Second) of Torts and described herein, proximately caused or contributed to cause Decedent's asbestos cancer and injuries.

100.    DEFENDANTS' breaches of duty under traditional maritime strict liability standards, as restated and summarized in Section 402A of the Restatement (Second) of Torts and described herein, were willful, wanton, and undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious and callous disregard for the health, safety, and rights of "exposed persons," including Decedent.

101.    As a direct and proximate result of the conduct of the DEFENDANTS, as aforesaid, Decedent's exposure to and inhalation of asbestos-containing dust, fibers and/or particles caused him to suffer permanent injuries, including but not limited to, asbestos-related disease, lung damage, cancer and ultimately death.

102.    As a direct and proximate result of the aforesaid conduct of the DEFENDANTS, Plaintiffs have incurred expenses for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment.

103.    The failure to warn by DEFENDANTS, and the product defect in the asbestos and asbestos-containing products of DEFENDANTS were substantial factors and a legal cause of decedent's injuries, death and damages thereby sustained by Plaintiffs, and that said DEFENDANTS demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent, and that such intentional acts and omissions were substantial factors in causing his disease and injuries.

104.    DEFENDANTS' breaches of duty under traditional maritime negligence standards, as described herein, were willful, wanton, and undertaken with actual or constructive knowledge that serious injury would result, and/or were accomplished with such recklessness as to evince a conscious and callous disregard for the health, safety, and rights of "exposed persons," including Decedent. Plaintiffs, for the sake of example and by way of punishing said ASBESTOS DEFENDANTS, seek punitive damages according to proof.

105.    WHEREFORE, Plaintiffs pray judgment against ASBESTOS DEFENDANTS, and each of them, as hereafter set forth.

//

//

//

**SEVENTH CAUSE OF ACTION - SURVIVAL ACTION**

(ALL DEFENDANTS AND DOES 1-400)

106.  Plaintiffs reallege and incorporate by reference herein each and every paragraph of this Complaint, and makes them a part of this, the Seventh Cause of Action, as though each were fully set forth herein.

107.  As a proximate result of the conduct of DEFENDANTS, and each of them, Decedent was required to, and did, employ physicians and surgeons to examine, treat and care for him and did incur medical and incidental expenses in a sum to be subsequently determined.

WHEREFORE, Plaintiffs pray judgment against DEFENDANTS, and each of them, as hereafter set forth.

**DAMAGES**

WHEREFORE, Plaintiffs pray judgment against Defendants, DOES 1-400, their "alternate entities," and each of them, inclusive, as follows:

1.  For general damages, including pain and suffering, according to proof;

2.  For special damages according to proof;

3.  For medical and related expenses according to proof;

4.  For loss of income, earning capacity, earning potential according to proof;

5.  For exemplary or punitive damages according to proof;

6.      For costs of suit herein;

7.      For prejudgment interest on all damages as allowed by laws; and

8.      For such other and further relief as the Court deems just and proper.

DATED:  October 18, 2024                    **GOLD LAW FIRM**

By:     _____
        ROGER E. GOLD
        Attorney for Plaintiffs